UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DANIAL,

                         **Plaintiff,**

     *- against -*

LANGENBACH et al,

                    **Defendants.**

12cv2983 (VB) (LMS)

**REPORT AND**
**RECOMMENDATION**

TO:   **THE HONORABLE VINCENT BRICCETTI,**
       **UNITED STATES DISTRICT JUDGE**

**I.**    **Introduction**

     This action concerns a contract dispute.  Plaintiff Samer Danial, proceeding pro se, commenced this action on April 16, 2012, against defendants Brian Langenbach (hereinafter "Brian"), allegedly doing business as Land Corp. of Arizona, and Brian's wife, Sherilynn Langenbach (hereinafter "Sherilynn"), seeking to recover damages that resulted from plaintiff's investment in a Ponzi scheme operated by Brian.  Docket Entry #1, Complaint at 3-4.  Although defendants answered the Complaint and initially participated in this litigation, they have failed to defend themselves or in any way participate in the matter for over a year.  Plaintiff now moves for entry of a default pursuant to Rule 55(a) of the Federal Rules of Civil Procedure, as well as for a default judgment pursuant to Rule 55(b) of the Federal Rules of Civil Procedure.  Docket Entry #26, Motion for Default Judgment.

     For the reasons that follow, I conclude, and respectfully recommend that Your Honor should conclude, that (1) the Clerk of the Court should be directed to enter a default, pursuant to Fed. R. Civ. P 55(a), against defendants on behalf of plaintiff; (2) plaintiff should be granted a default judgment against Brian, pursuant to Fed. R. Civ. P. 55(b)(2), for the amount sought in the

Complaint, $965,361.18; and (3) the claims against Sherilynn should be dismissed <u>sua sponte</u> because plaintiff fails to state a claim against her.

## II.   Background and Facts

Plaintiff is a citizen of New York, residing in Yonkers, NY.  According to the Complaint and the exhibits attached thereto, as well as plaintiff's testimony at a June 23, 2014, evidentiary hearing in the matter, plaintiff loaned $100,000 to Brian on September 13, 2006, for investment in an Arizona real estate development project.  Docket Entry #1, Complaint, unnumb Exh., Findings of Fact at ¶ 7.  Plaintiff testified that he wrote a check to Land Corp. of Arizona for such amount, and gave it to his cousin, who resided in Arizona.  Docket Entry #1, Complaint, unnumb. Exh., Check; June 23, 2014, Hearing Trans. at 8.  According to plaintiff, his cousin gave the check to Brian, who deposited into his personal checking account.  <u>Id.</u>  Plaintiff alleges that defendants lived in Arizona at the time.

Brian apparently promised to repay the loan amount to plaintiff, plus thirty percent interest, by September 13, 2007. <u>Id.</u>; Docket Entry #1, Complaint, unnumb Exh., Findings of Fact at ¶ 7.  According to plaintiff, the agreement was structured in such a way that Brian was to pay the thirty percent interest on the $100,000 in four installments of $7,500 each, with a payment due every three months after plaintiff first transferred the money to Brian.  <u>Id.</u> at ¶ 8.

Rather than make the first interest-only payment of $7,500 to plaintiff, which was apparently due in mid-December, 2007, Brian allegedly asked plaintiff, through an intermediary, for an additional investment (i.e. loan) of $91,500.  June 23, 2014, Hearing Trans. at 11; Docket Entry #1, Complaint, unnumb Exh., Findings of Fact at ¶ 8.  In return, Brian apparently agreed to provide plaintiff with a promissory note for $100,000, the amount comprised of the second loan of $91,500, the unpaid $7,500 interest payment, and a miscellaneous $1,000 "bonus."  <u>Id.</u>; June

2

23, 2014, Hearing Trans. at 11-12.  Plaintiff apparently agreed to make the second loan to Brian,

and he wired $91,500 to the Arizona bank account of Land Corp. of Arizona on December 4,

2006.  Id. at 12; Docket Entry #1, Complaint at ¶¶ 7-8; Docket Entry #1, unnumb. Exh.,

Domestic Money Transfer.  Plaintiff attaches to the Complaint a "Promissory Note" connected

with the loan, drafted by and signed by Brian, see also June 23, 2014, Hearing Trans. at 3, which

states:

> FOR VALUE RECEIVED, the undersigned ("Borrower") hereby promises to pay
> to the order of Samer Daniel[] ("Holder") . . . the principal amount of one hundred
> thousand and 00/100 Dollars ($100,000.00) with interest on any unpaid balance from
> December 15, 2006 at the rate of thirty percent per annum; with interest-only
> payments in the amount of $7,500.00 due on or before the 15th day of March 2007,
> and on the 15th day of the third month thereafter until a final payment of principal
> and interest not later than December 15, 2007 (the "Maturity Date").
>
> Borrower will pay in full the balance due and owing on or before the Maturity Date.
> Beginning with the day after the Maturity Date, if this Note is not paid in full as of
> that respective Date, all amounts due under this Note will bear interest at the rate of
> thirty percent (30.0%) per annum . . . Interest shall be prorated based upon the actual
> date of the final payment.
>
> A late fee of one hundred dollars ($100.00) per payment will be assessed for each
> interest-only payment received by Holder fifteen (15) or more calendar days past the
> quarterly due date.  Borrower will pay in full the balance of unpaid principal and
> unpaid interest on or before the Maturity Date.  A late fee of one hundred dollars
> ($100.00) per day will be assessed for each day beyond the respective maturity date
> any amount under this Note remains unpaid.  Borrower agrees that the late fee is a
> reasonable compensation to Holder for damages Holder will incur if this Note is not
> paid in full by the Maturity Date.

Docket Entry #1, Complaint, unnumb. Exh., Promissory Note at 1.  At the evidentiary hearing,

plaintiff testified that the terms of the promissory note mirrored those of the September 13, 2006,

loan, except that the first loan had a maturity date of September 13, 2007.  June 23, 2014,

Hearing Trans. at 15-16.

3

Plaintiff states that he received interest-only payments from Brian in the amounts of $15,000 in June, 2007, and $5,000 in September, 2011.  Id. at 14-17.  Plaintiff explained that the June 2007 payment was actually the interest amounts that were due on each loan in March, 2007. Id.  According to the Complaint, plaintiff has received no other payments from Brian on either loan.  Id.

## III.    Plaintiff's Allegations

On April 16, 2012, plaintiff commenced the instant action against defendants.  In the Complaint, plaintiff essentially claims that the agreement and the promissory note constituted contracts, and that Brian breached such contracts when he failed to make payments in accordance with their terms.  Citing Ariz. Rev. Stat. Ann. § 44-2031, plaintiff names Sherilynn as a defendant in the matter, based upon her marriage to Brian.  Plaintiff asks "the court to return my money include [sic] all interest promised."  Docket Entry #1, Complaint at ¶ V.[1]  He specifies: "the amount I'm asking for, is the principal plus interest and Penalty, (see attch Documents) $965,361.18."  Id.  Based upon the residency of the parties, the nature of the claims, and the amount in controversy, the Court properly has diversity jurisdiction over this matter, pursuant to 28 U.S.C. § 1332.

On June 12, 2012, defendants, also proceeding pro se, filed an Answer in which they admitted that plaintiff "did loan $200,000 to Landcorp [o]f AZ Inc. for a return of 30% Per year."  Docket Entry #7, Answer at ¶ I.  The Answer further confirmed that "[t]he events did take place in Scottsdale AZ between 9/13/2006 and 12/4/2006."  Id.  Defendants claimed that plaintiff

---

[1]  Plaintiff also asks "the court to put Langenbach in jail for what he did to me and other people." Docket Entry #1, Complaint at 4.  The Court is without power to grant such relief in this civil action.

4

is precluded from recovering damages here based upon an Arizona order of restitution entered against defendants on their consent. Id. at ¶ II. Defendants also argued that the loans were, in effect, unlicensed sales of securities, and, therefore, the contracts underlying such sales were invalid. See id. Defendants finally claimed: "The events took place in AZ and I do not have any ties to New York. Therefore it is an improper venue[.]  If [t]he original [a]greement was enforced[, i]t was [g]overned [b]y AZ [la]w." Id. Defendants made several appearances in the matter, but they have not actively defended themselves in the action since November 7, 2012.

On September 5, 2013, Your Honor referred the matter to me on for the purposes of overseeing general pre-trial matters, as well as for preparing a report and recommendation on any dispositive motion. Docket Entry #17, Order of Reference.  At an October 21, 2013, status conference, at which defendants did not appear, I granted plaintiff permission to move, pursuant to Fed. R. Civ. P. 55, for the entry of a default and a default judgment against defendants due to their failure to defend themselves in the matter.  I directed plaintiff to file such motion, with supporting affidavits and documentary evidence to establish damages, and on notice to defendants, by November 20, 2013.  October 21, 2013, Minute Entry.  On January 20, 2014, plaintiff submitted a document entitled "Default Judgment," which is effectively a motion for the entry of a default, as well as for a default judgment against defendants.  Docket Entry #26, Motion for Default Judgment.[2]

## IV.   Discussion

### A.   Entry of Default

---

[2]  In light of plaintiff's pro se status, and because defendants are no longer participating in the litigation, no prejudice appears to have resulted from plaintiff's tardy submission of the motion. Therefore, the late submission does not mitigate against consideration of the motion on its merits.

Pursuant to Fed. R. Civ. P. 55(a), "[w]hen a party against whom a judgment or affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  Plaintiff commenced this action on April 16, 2012, by the filing of the Complaint.  Docket Entry #1, Complaint.  Defendants were served at 8642 East Waterford Circle, Mesa, AZ, on April 25, 2012, Docket Entry #4, Summons, and they filed an Answer, as well as a Notice of Appearance, on June 12, 2012.  Docket Entry #7, Answer; Docket Entry #8, Notice of Appearance.

On June 18, 2012, Your Honor scheduled an initial conference in the matter for July 27, 2012.  Docket Entry #9, Notice of Initial Conference.  By letter dated July 19, 2012, and received by the Court on July 24, 2012, defendants requested a sixty-day adjournment of the conference so that they could retain counsel in New York.  Docket Entry #11, Endorsed Letter. Your Honor denied the request for an adjournment, but permitted defendants to appear at the July 27, 2012, conference by telephone.  Id.  Plaintiff appeared in person.  Defendants, however, failed to appear, either by counsel or pro se, at the conference.  July 27, 2012, Minute Entry; Docket Entry #12, Order.  Your Honor scheduled a subsequent status conference for September 26, 2012, and ordered the all parties to appear.  Id.

All parties were present at the September 26, 2012, conference; plaintiff appeared pro se in person, and defendants appeared pro se, by telephone.  September 26, 2012, Minute Entry.  At the conference, Your Honor gave defendants permission to move for summary judgment dismissing the Complaint, setting a November 9, 2012, deadline for the submission of the motion.  Docket Entry #13, Order.

On November 7, 2012, defendants asked for an adjournment of the deadline for the filing of the motion for summary judgment so that they could retain counsel.  Docket Entry #14,

6

Motion.  Your Honor granted defendants' motion, setting November 30, 2012, as the due date for

the motion for summary judgment.  Docket Entry #15, Order.  Defendants, however, never filed

the motion, and no attorney filed a notice of appearance on defendants' behalf.

On September 9, 2013, following the reference of the matter to me, I issued a scheduling

notice, informing the parties that I had scheduled a status conference for October 2, 2013.

Docket Entry #18, Scheduling Notice.  The notice was mailed, via first-class mail, to defendants

at 8642 East Waterford Circle, Mesa, AZ 85212, which is the address listed for defendants on

CM/ECF.[3]  The scheduling notice was returned to the court, with the explanation: "Addressee

Unknown."  Oct. 28, 2013, Docket Entry.  I re-scheduled the status conference to October 21,

2013, and, on October 2, 2013, a scheduling notice to such effect was sent to defendants via

certified first-class mail; the notice, which provided that defendants could appear by telephone,

was again sent to defendants at the Mesa, AZ, address.  Docket Entry #19, Scheduling Notice.

Examination of tracking information on the United States Postal Service (hereinafter "USPS")

website (attached) shows that efforts were made to deliver the notice to defendants at the Mesa,

AZ, address on October 7, 2013.  Such delivery was apparently unsuccessful, and the USPS

tracking information states: "Undeliverable as Addressed."  For reasons that are not clear to me,

---

[3]  As previously noted, plaintiff served the Complaint upon defendants at the Mesa, AZ, address.
Defendants' June 12, 2012, Notice of Appearance, as well as their Answer, list their address as
P.O. Box 3080, Gilbert, AZ 85299.  Docket Entry #7, Answer; Docket Entry #8, Notice of
Appearance.  However, defendants' July 19, 2012, letter requesting an adjournment listed the
Mesa, AZ, address as their return address.  Docket Entry #11, Endorsed Letter.  Accordingly, the
July 27, 2012, Minute Entry resulting from the conference before Your Honor directed that the
Docket Sheet be updated to reflect the Mesa, AZ, address as defendants' address.  July 27, 2012,
Minute Entry.  It appears that defendants have received mail from the Court at the Mesa, AZ,
address because Your Honor's July 27, 2012, Order setting a conference for September 26, 2012,
indicates that it was mailed to defendants, presumably at the Mesa, AZ, address.  Docket Entry
#12, Order.  Defendants appeared at the September 26, 2012, conference, signaling that they
received Your Honor's July 27, 2012, Order.

the USPS made efforts to deliver the notice to some unknown address in Gilbert, AZ 85234, on October 10, 2013, but such attempt was also unsuccessful, with the tracking information giving the following reason: "Moved, Left no Address."

On October 2, 2013, and October 5, 2013, staff from my Chambers left two voice messages at the phone number listed by defendants on their June 12, 2012, Notice of Appearance – 480-352-8615.  Docket Entry #8, Notice of Appearance.  The receiving voice message attached to the phone number did not indicate to whom the phone number belongs.  My Chambers received no response from defendants.

On October 15, 2013, I issued a second scheduling notice for the October 21, 2013, status conference.  Docket Entry #20, Scheduling Notice.  The notice cautioned: "Failure to appear at this conference may result in the entry of a default against defendants."  Id.  I again sent the notice to defendants at the Mesa, AZ, address, this time by way of Federal Express Priority Overnight service.  Tracking information from the Federal Express website (attached) indicates that the notice was delivered, stating: "Left at front door.  Package delivered to recipient address – release authorized."  Id.

At the October 21, 2013, status conference, plaintiff appeared pro se and in person. Defendants, however, did not appear, and they did not contact my Chambers concerning the conference.  October 21, 2013, Minute Entry.  At the conference, plaintiff stated that he had not received any recent communications from defendants.  Due to defendants' failure to defend themselves in the matter, I gave plaintiff permission to move for the entry of a default and a default judgment, stating that such motion should set forth evidence of plaintiff's damages as well as his calculations of losses.  Plaintiff thereafter filed such motion.  Docket Entry #25,

Order to Show Cause.  He claims to have served it upon defendants.  Defendants neither filed nor served upon plaintiff a response to the motion.

Plaintiff's motion was in the wrong form, and plaintiff did not support the application with admissible evidence.  Id.  Therefore, by Order dated December 4, 2013, I directed plaintiff to file and serve a new motion, requiring a detailed calculation of damages that was supported by admissible evidence.  Docket Entry #21, Order.  The Order was sent to defendants, again at the Mesa, AZ, address by means of first-class mail.  The Order, however, was returned with the notations "Addressee Unknown" and "Return to Sender, Attempted – Not Known, Unable to Forward" (attached).  Plaintiff filed and apparently served the motion.  Docket Entry #26, Motion for Default Judgment.  Again, defendants did not respond either to plaintiff or to the Court.

On May 22, 2014, I scheduled an evidentiary hearing on plaintiff's motion for default.  Docket Entry #24, Scheduling Notice.  The scheduling notice for the hearing was mailed to defendants by certified first-class mail.  Tracking information for the letter from the USPS website indicates that the notice was "Undeliverable as Addressed" (attached).  Plaintiff appeared in person at the evidentiary hearing.  Defendants did not appear.

This history establishes that the Court has undertaken significant efforts to ensure that defendants were aware of the proceedings in this matter.  Specifically, I transmitted scheduling notices and orders to defendants' last known address through first-class mail, certified first-class mail, and Federal Express Priority Overnight service.  In addition, my staff left two voice messages with the phone number listed by defendants on their Notice of Appearance.  Based upon their failure to participate in the litigation, defendants appear to have done one or all of the following: (1) refused to accept the Court's mailings; (2) received, but failed to respond to, the

9

Court's mailings; (3) moved to a new address without leaving a forwarding address with the USPS or the Court; (4) not checked the voice messages on the phone number that they listed with the Court; (5) failed to respond to the voice messages left by my staff on the phone number that they listed with the Court; and/or (6) stopped using the telephone number that they listed with the Court, and they have failed to provide the Court with a new telephone number or otherwise inform the Court that the telephone number on file is no longer active. While there may be alternate methods of notice which could be utilized to encourage defendants to participate in these proceedings, it is my conclusion that the efforts so far undertaken have been sufficient to ensure defendants' knowledge of the proceedings. Thus, I find that, despite their awareness of the ongoing proceedings, defendants have failed to defend themselves in the matter within the definition of Fed. R. Civ. P. 55(a). As a result, I conclude, and respectfully recommend that Your Honor should conclude, that the Clerk of the Court should enter default against defendants on behalf of plaintiff. See Parise v. Riccelli Haulers, Inc., 672 F.Supp. 72, 74 (N.D.N.Y. 1987) (granting default judgment for failure to answer amended complaint notwithstanding that defendant had answered the original complaint).

## B.  Standard of Review for Default Judgment

Following a default, "it remains for the court to consider whether the unchallenged facts constitute legitimate causes of action, since a party in default does not admit mere conclusions of law." Gerritsen v. Glob Trading, Inc., 06cv3756 (SLT) (RLM), 2009 WL 262057, *3 (E.D.N.Y. Feb. 4, 2009) (internal quotation marks, brackets, and citation omitted); accord Rolls–Royce plc v. Rolls–Royce USA, Inc., 688 F.Supp.2d 150, 153 (E.D.N.Y. 2010). Upon the default of a party, a court must accept as true all well-pleaded factual allegations in the complaint, except those relating to damages. House v. Kent Worldwide Mach. Works, Inc., 359 F. App'x 206, 207

10

(2d Cir. 2010) (citing Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981)); see Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 108 (2d Cir. 1997); Cappetta v. Lippman, 913 F.Supp. 302, 304 (S.D.N.Y. 1996) ("A party's default in an action is a concession of liability, but is not a concession of damages."). "Damages must be established by the plaintiff in a post-default inquest," Sack v. Lawton, 01cv285 (SHS), 2003 WL 22682043, *4 (S.D.N.Y. Aug. 28, 2003), where "the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation." Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974).

In determining the amount of damages to be awarded, "under Rule 55(b)(2), 'it is not necessary for the District Court to hold a hearing, as long as it ensure[s] that there [is] a basis for the damages specified in the default judgment.' " Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997) (quoting Fustok v. ContiCommodity Servs., Inc., 873 F.2d 38, 40 (2d Cir.1989) (brackets in original omitted)). For instance, the damages may be shown by affidavits or documentary evidence. Sack, 2003 WL 2268043 at *4.

**C.    Choice of Law**

The Court must first determine which state's law is most appropriate for addressing plaintiff's breach of contract claims. The promissory note that underlies the second loan provides that it "shall be governed by, enforced, determined and construed in accordance with the laws of the State of Arizona, without regard to its conflicts of law principles." Docket Entry #1, Complaint, unnumb. Exh., Promissory Note at 2. Such clause is equally applicable to the first loan because, as plaintiff testified at the evidentiary hearing, the terms of the first loan, other than the loan date and maturity date, were identical to those in the promissory note. June 23, 2014, Hearing Trans. at 15-16. Such a contractual choice of law is not conclusive; the Court

11

must decide whether the clause is controlling.  Valley Juice Ltd., Inc. v. Evian Waters of France, Inc., 87 F.3d 604, 608 (2d Cir. 1996).

Because this is a diversity matter, the Court "must apply the choice of law analysis of the forum state." GlobalNew Financial.Com, Inc. v. Frank Crystal & Co., Inc., 449 F.3d 377, 382 (2d Cir. 2006); Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 496 (1941) (federal courts apply the choice of law analysis of the forum state to promote uniformity within the state). The forum state here is New York, and the matter is properly venued in the United States District Court for the Southern District of New York.

When it comes to contractual choice-of-law provisions, the well-settled policy of the courts of New York is that, absent fraud or a violation of a fundamental state policy, such provisions will be honored "as long as the state selected has sufficient contacts with the transaction." Hartford Fire Ins. Co. v. Orient Overseas Containers Lines (UK) Ltd., 230 F.3d 549, 556 (2d Cir. 2000); see Aramarine Brokerage, Inc. v. OneBeacon Ins. Co., 307 Fed.Appx. 562, 564 (2d Cir. 2009); Cargill, Inc. v. Charles Kowsky Resources, Inc., 949 F.2d 51, 55 (2d Cir. 1991) (citing Haag v. Barnes, 9 NY2d 554, 559 (1961)); Boss v. American Exp. Financial Advisors, Inc., 15 AD3d 306, 307 (1st Dept. 2005).[4]  In New York, absent a choice-of-law

---

[4]  New York takes this standard, in part, from Restatement (Second) of Conflict of Laws § 188 (2), which provides:

> The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either

> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or

> (b) application of the law of the chosen state would be contrary to a fundamental

clause, choice of law issues in contract matters are determined under the "center of gravity" or "grouping of contacts" analysis in order to ensure that the contract is governed by the law of the state with the closest relationship to the parties and their transaction. Zurich Ins. Co. v. Shearson Lehman Hutton, 84 NY2d 309, 317 (1994) (quoting Restatement (Second) of Conflict of Laws § 188(1)); In re Allstate Ins. Co. (Stolarz), 81 NY2d 219, 226 (1993) (Opn. by Kaye, Ch. J.). Citing Restatement (Second) of Conflict of Laws § 188(2), Chief Judge Kaye's opinion in Stolarz recognized five contacts of import in a contract case: "the place of contracting, negotiation and performance; the location of the subject matter of the contract; and the domicile of the contracting parties." Stolarz, 81 NY2d at 227; see Tri-State Employment Servs., Inc. v. Mountbatten Sur. Co., 295 F.3d 256, 61 (2d Cir.2002). Such factors also appear relevant to ensuring that the state selected in a choice-of-law clause bears a sufficient relation to the subject transaction.

Here, Arizona has a substantial relationship to the transactions that form the basis for this action. Brian, apparently a resident of Arizona, was doing business, as Land Corp. of Arizona, in Arizona when he solicited the subject loans from plaintiff. Plaintiff allegedly transmitted the funds from New York to Arizona, where Land Corp. of Arizona received them. Also, Brian drafted and signed the promissory note, presumably in Arizona. Thus, the parties' choice of Arizona law was reasonable, and, as a result, the substantive law of Arizona will be applied here.

### D.    Breach of Contract Claims

Under Arizona law, "[a] breach of contract claim contains three elements: (1) the

---

policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

existence of a contract, (2) its breach, and (3) resulting damages." Taylor v. Nair, 13cv1982

(DGC), 2014 WL 2639656, *2 (D. AZ. June 13, 2014) (citing Chartone, Inc. v. Bernini, 83 P.3d

1103, 1111 (Ariz. Ct. App. 2004)); Herring v. Countrywide Home Loans, Inc., 06cv2622 (PGR),

2007 WL 2051394, *2 (citing Graham v. Asbury, 540 P.2d 656, 657 (Ariz. 1975)).

　　　Based upon plaintiff's moving papers as well as the exhibits attached thereto, the

testimony adduced at the evidentiary hearing, and the allegations set forth in the Complaint,

plaintiff alleges sufficient facts to make out breach of contract claims against Brian on both

loans.  Plaintiff alleges that he and Brian, who was doing business as Land Corp. of Arizona,

entered into two contracts; each agreement called for plaintiff to loan $100,000 to Brian.

Plaintiff claims that, under the terms of the agreements, Brian was to repay each loan, plus

thirty-percent interest, by the maturity dates, which were on or about September 13, 2007, and

December 15, 2007.  Other than an initial interest-only payment of $7,500 made on each loan,

Brian allegedly failed to repay plaintiff the amounts due by the maturity dates, thus breaching

both contracts.  According to plaintiff, he suffered damages in the amount of the $200,000 that

was not repaid to him, as well as the expected interest, minus the $15,000 payment.[5]  In the

Answer, defendants admit that plaintiff made the aforementioned loans to Land Corp. of

Arizona, and that plaintiff was to receive annual interest on the loans at a rate of thirty percent.

　　　Plaintiff, however, fails to state a claim against Sherilynn.  He seeks to hold her liable on

the loans made to Brian on the basis of Ariz. Rev. Stat. Ann. § 44-2031(C). Chapter 12 of the

Arizona Revised Statutes, of which Ariz. Rev. Stat. Ann. § 44-2031(C) is a subsection, concerns

---

[5] As noted on page four of this Report and Recommendation, Brian also made an interest-only payment of $5,000 to plaintiff in September, 2011 – well after the alleged breaches of the contracts.  June 23, 2014, Hearing Trans. at 14-17.

the sale of securities within the state, and Ariz. Rev. State. Ann. § 44-2032 vests the Arizona corporation commission with certain powers to civilly prosecute unregistered sellers of securities in the state.  When an individual purchases securities in Arizona from an unregistered seller, the purchaser may bring a claim against that seller, pursuant to Ariz. Rev. Stat. Ann. § 44-2001(A), to recover the consideration given for such securities.  Ariz. Rev. Stat. Ann. § 44-2031(C), upon which plaintiff bases his claim against Sherilynn, provides that the Arizona corporation commission "may join the spouse [of an unregistered seller of securities] in any action authorized by this chapter to determine the liability of the marital community."

Here, plaintiff's claims sound in breach of contract, rather than under section 44-2001, or any other provision of Chapter 12 of the Arizona Revised Statutes.  Because this is not an action authorized by Chapter 12 of the Arizona Revised Statutes, Ariz. Rev. Stat. Ann. § 44-2031(C) is inapplicable.  Furthermore, even if plaintiff had brought a claim against Brian pursuant to Ariz. Rev. Stat. Ann. § 44-2001(A), he does not have standing to name Sherilynn as a defendant under Ariz. Rev. Stat. Ann. § 44-2031(C); that power, according to the plain language of the statute, rests solely with the Arizona corporation commission.  Consequently, plaintiff fails to state a claim against Sherilynn.  Accordingly, I conclude, and respectfully recommend that Your Honor conclude, that the claims against Sherilynn be dismissed sua sponte.

### E.    Damages

Arizona law recognizes that the measure of damages in a breach of contract claim is the amount that would put the non-breaching party in the position he or she would have enjoyed but for the breach.  See e.g. Sandpiper Resorts Development Corp. v. Global Realty Investments, LLC, 904 F.Supp.2d 971, 979 (D. AZ. 2012); Best Western Intern., Inc. v. Richland Hotel Corp. GP, LLC, 11cv1246 (LOA), 2012 WL 608016, *6 (D. AZ. Jan. 18, 2012); All American School

Supply Co. v. Slavens, 609 P.2d 46, 48 (Ariz. 1980) ("Arizona has long held that damages for breach of contract are those damages which arise naturally from the breach itself or which may reasonably be supposed to have been within the contemplation of the parties at the time they entered the contract."); see also 11 S. Williston A Treatise on the Law of Contracts, § 1338, at 198 (3d ed. 1968); 5 A. Corbin, Corbin on Contracts § 992 (1964)).  The Supreme Court of Arizona has made clear that it "is committed to the proposition that where the contract provides what the rights of the parties to the contract shall be in the event of a breach, the court will enforce the contract as written." Green v. Snodgrass, 289 P.2d 191, 193 (Ariz. 1955); Best Western Intern., Inc., 2012 WL 608016 at *8 ("Under Arizona law, 'express contract provisions governing remedies or damages are generally binding on the parties.' " (quoting United Dairymen of Ariz. v. Schugg, 128 P.3d 756, 761 (Az. Ct. App. 2006)).  On the issue of interest on a loan, Ariz. Rev. Stat. Ann. § 44-1201(A) provides that

> [i]nterest on any loan, indebtedness or other obligation shall be at the rate of ten per cent per annum, unless a different rate is contracted for in writing, in which event any rate of interest may be agreed to. Interest on any judgment that is based on a written agreement evidencing a loan, indebtedness or obligation that bears a rate of interest not in excess of the maximum permitted by law shall be at the rate of interest provided in the agreement and shall be specified in the judgment.

Here, the demand clause of the Complaint states: "I would ask the court to return my money include all interest promised (see attached documents), order of Restitution . . . The amount I'm asking for, is the principal plus interest and Penalty (see atth Documents) $965,361.18." Docket Entry #1, Complaint at ¶ V.  In his first motion for a default judgment, plaintiff calculated his damages as follows:

| | |
|---|---|
| Principal amount sued for | $200,000 |
| Interest at 30% from 9/2006 through 6/2012 | $781,784.34 |

16

Costs and Disbursements:

| | |
|---|---|
| Clerks Fee | $340.00 |
| Process Server Fee for Service | $646.10 |
| Statutory Fee | $100.00 |
| Total as of November 17, 2013 | $982,870.44 |

November 17, 2013, Motion for Summary Judgment, Statement of Damages.  However, later in the same submission, plaintiff asked that judgment be entered in his favor in the amount of $965,361.18, which is the amount stated in ad damnum clause of the Complaint.  Id.; Docket Entry #1, Complaint at ¶ V.  Plaintiff's second submission on the motion for a default judgment contained the following calculation of damages:

| | |
|---|---|
| Principal amount sued for | $200,000.00 |
| Interest at 30% from 9/2006 through 12/2012 | $749,900.00 |
| Penalty for Non Payment of $100 per day if Principal and interest not paid by maturity date | $209,900.00 |
| Arizona Commission Order (No.71962 11/08/2010 | $10%/year |
| Costs and Disbursements: | |
| Clerks Fee | $340.00 |
| Process Server Fee for Service | $646.10 |
| Statutory Fee | $ ????????? |
| Total as of January _1st_, 2013 | $999,103.00 |

Motion for Default Judgment, unnumb Exh.

Both of plaintiff's submissions on damages compute the thirty-percent interest in a compound form.  Neither the promissory note nor any evidence in the record makes clear

17

whether interest was intended to be simple or compound.  Docket Entry #1, Complaint, unnumb.

Exh., Promissory Note at 1.  However, I can infer from the demand in the Complaint for

$965,361.18 in damages that plaintiff applied the thirty-percent interest rate in a compound

formula.[6]  In their Answer, defendants did not assert that plaintiff's calculation of interest and

penalties was incorrect.  I therefore conclude that defendants concede that interest is to be

compounded.

I am a bit mystified by the interest computations set forth in plaintiff's two submissions

on damages because they are inconsistent with one another, and both differ from my own

calculation, which is detailed below.  Plaintiff's first calculation does not seem to account for the

$20,000 in interest-only payments that he received from Brian.  In addition, plaintiff's second

submission accrues interest through the end of 2012, which would have come after the filing of

the Complaint.

The principal amount of the loan on September 13, 2006, was $100,000.  At thirty-

percent compound interest, the amount due became $130,000 on September 13, 2007, the

maturity date.  Assuming that Brian's June, 2007, interest-only payment of $15,000 was to be

evenly split between the two loans, only $7,500 was paid toward interest on the loan by the

September 2007 maturity date, leaving $122,500 due on the loan.  In September, 2008, the

annual interest accrued again, increasing the amount due to $159,250.  In September, 2009, the

annual interest accrued again, increasing the amount due to $207,025.  The annual interest again

---

[6]  According to plaintiff's allegations, the principal amount of the loans in September and
December, 2006, totaled $200,000.  Had plaintiff utilized a 30% simple interest formula, interest
would have amounted to $60,000 annually.  Five years of simple interest of 30% (September,
2006, to December, 2011), would have totaled $300,000.  $200,000 in principal plus $300,000 in
simple interest, minus $20,000 in interest-only payments, amounts to $480,000, which is less
than half of the $965,361.18 in damages demanded in the Complaint.

accrued on the loan in September, 2010, increasing the amount due on the loan to $265,232.50.

Assuming that Brian's September 2011 payment of $5,000, which was presumably to go toward

interest, was to be split between the loans, $260,232.50 remained due on the loan when interest

again accrued in September, 2011, which increased the amount owed on the loan to $338,302.25.

Plaintiff commenced the action in April, 2012, and, therefore, based the demand in the ad

damnum clause on the state of the amount due on the loan at such time.  The balance on the

second loan would have accrued to the same amount by the time of commencement of this

action, resulting in a total amount due of $676,604.50.

    In his second submission on damages, plaintiff also seeks $209,900.00 in contractual

penalties based upon Brian's failure to pay the amounts due.  Such fees stem from the clause in

the contracts that provides:

> A late fee of one hundred dollars ($100.00) per day will be assessed for each day
> beyond the respective maturity date any amount under this Note remains unpaid.
> Borrower agrees that the late fee is a reasonable compensation to Holder for damages
> Holder will incur if this Note is not paid in full by the Maturity Date.

Docket Entry #1, Complaint, unnumb. Exh., Promissory Note at 1.  Approximately 1,677 days

passed between the maturity date of the first loan, September 13, 2007, and the April 16, 2012,

commencement of the action.  Approximately 1,584 days passed between the maturity date of

the second loan, December 15, 2007, and the commencement of this action.  Taken together, the

loans remained unpaid for 3,261 days beyond their maturity dates until the commencement of

this action, amounting to approximately $326,100 in late fees under the aforementioned clause in

the loan agreements.[7]  Plaintiff's submission on damages make clear that he believes the

tabulation of late fees is separate and apart from the calculations of principal and interest.  Based

---

[7] Again, the Court is perplexed as to how plaintiff reached his figure – that of $209,000.

19

upon my calculations, Brian owed approximately $1,002,704.50 in principal, interest, and the aforementioned fees on the notes when this action was commenced.

While the methods used by plaintiff in his two calculations of damages are unclear, choosing between either of them or my own is unnecessary because all three methods result in amounts that exceed the ad damnum clause of the Complaint. Rule 54(c) of the Federal Rules of Civil Procedure provides:

> A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings. Every other final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings.

A distinction is made between a default judgment and a contested judgment.

> The theory of this provision is that the defending party should be able to decide on the basis of the relief requested in the original pleading whether to expend the time, effort, and money necessary to defend the action. It would be fundamentally unfair to have the complaint lead defendant to believe that only a certain type and dimension of relief was being sought and then, should defendant attempt to limit the scope and size of the potential judgment by not appearing or otherwise defaulting, allow the court to give a different type of relief or a larger damage award. In a similar vein, unless all the parties in interest have appeared and voluntarily litigated an issue not within the pleadings, the court should consider only those issues presented in the pleadings. In sum, then, a default judgment may not extend to matters outside the issues raised by the pleadings or beyond the scope of the relief demanded. A judgment in a default case that awards relief that either is more than or different in kind from that requested originally is null and void and defendant may attack it collaterally in another proceeding.

10 Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure, § 2663 (1998) (footnote omitted).

> The restriction on the award of relief in the first sentence of the rule most clearly is justified in the case of a completely nonappearing defendant. That defendant receives only the original complaint and therefore is aware only of the prayer for relief set forth in that document. The decision not to enter the action is based solely on the information in that pleading and defendant should be allowed to rely on it. However, a defendant who has appeared is entitled to receive notice of all subsequent proceedings in the action, including the hearing on the application for a

20

> default judgment. Therefore, if plaintiff changes the prayer for relief, defendant would be notified and conceivably could reevaluate and reverse the earlier decision not to defend actively.

Id.

Although defendants have appeared in this matter, it is unclear whether they received notice of plaintiff's motion for a default judgment.  Consequently, they may not be aware that the motion seeks damages above those set forth in the ad damnum clause of the Complaint. Therefore, the limitations of Fed. R. Civ. P. 54(c) appear appropriate.

Plaintiff could have included in his Complaint a demand for pre-judgment interest, and "[b]y operation of Rule 54(c), his failure to do so, intentional or not, ran the risk that his damages would be limited in the event of a default." Silge v. Merz, 510 F.3d 157, 160 (2d Cir. 2007) (Opn. by Katzmann, J.).  As Judge Katzmann noted in Silge, reading Fed. R. Civ. P. 54(c) to so limit recovery in the context of a default judgment is appropriate because, "[b]y limiting damages to what is specified in the 'demand for judgment,' the rule ensures that a defendant who is considering default can look at the damages clause, satisfy himself that he is willing to suffer judgment in that amount, and then default without the need to hire a lawyer." Id. at 160.

The Complaint seeks $965,361.18.  Docket Entry #1, Complaint at ¶ V.  Although the calculations of damages before the Court all result in damages exceeding such amount, the Court must limit plaintiff's damage award to $965,361.18.  See Silge v. Merz, 05cv3648 (GBD) (AJP), 2005 WL 2387482 (S.D.N.Y. Sept. 29, 2005), Report and Recommendation adopted, 05cv3648 (GBD), 2006 WL 29632 (S.D.N.Y. Jan. 6, 2006), aff'd, 510 F.3d 157 (2d Cir. 2007).

## V.    Conclusion

For the reasons stated above, I conclude, and respectfully recommend that Your Honor should conclude, that (1) the Clerk of the Court should enter default, pursuant to Fed. R. Civ. P

55(a), against defendants on behalf of plaintiff; (2) plaintiff be granted a default judgment against defendant Brian Langenbach, pursuant to Fed. R. Civ. P. 55(b)(2), for the amount sought in the Complaint, $965,361.18 (inclusive of pre-judgment interest); and (3) the claims against defendant Sherilynn Langenbach be dismissed sua sponte.

## **NOTICE**

Pursuant to 28 U.S.C. § 636(b)(1), as amended, and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days, plus an additional three (3) days, pursuant to Fed. R. Civ. P. 6(d), or a total of seventeen (17) days, see Fed. R. Civ. P. 6(a), from the date hereof, to file written objections to this Report and Recommendation. Such objections, if any, shall be filed with the Clerk of the Court, with extra copies delivered to the Chambers of the Honorable Vincent Briccetti at the Hon. Charles L. Brieant Jr. Federal Building and Courthouse, 300 Quarropas Street, White Plains, New York, 10601, and to the Chambers of the undersigned at the same address. Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered.

Requests for extensions of time to file objections must be made to Judge Briccetti, and should not be made to the undersigned.

Dated: August ⎯ 2014
White Plains, NY

Respectfully submitted,

Lisa Margaret Smith
United States Magistrate Judge
Southern District of New York

A copy of the foregoing Report and Recommendation has been sent to the following:

22

Honorable Vincent Briccetti, U.S.D.J.

Samer L Danial
13 Sprain Place
Yonkers, NY 10701

Brian Langenbach
Sherilynn Barbara Langenbach
8642 E. Waterford Cir.
Mesa, AZ 85212
480.352.8615

ʹATES DISTRICT COURT
  CHAMBERS OF
MARGARET SMITH
ʹATES MAGISTRATE JUDGE
ʹ STATES COURTHOUSE
QUARROPAS STREET
ʹAINS, NEW YORK 10601

OFFICIAL BUSINESS



**CERTIFIED MAIL**™

7012 2920 0001 0336 ʹ





Brian Langenbach
Sherilynn B. Langenbach
8642 E. Waterford Cir.
Mesa,   NIXIE        850   5E  1009        0005/28/14

RETURN TO SENDER
NOT DELIVERABLE AS ADDRESSED
UNABLE TO FORWARD

BC: 10601414000        *1258-02072-22-44

English     Customer Service     USPS Mobile          Register / Sign In



USPS.COM®           Search USPS.com or Track Packages

Quick Tools     Ship a Package     Send Mail     Manage Your Mail     Shop     Business Solutions

# USPS Tracking™



**Customer Service ›**
Have questions? We're here to help.

**Tracking Number: 70122920000103364866**

## Product & Tracking Information

**Postal Product:**     **Features:**
Certified Mail™

| DATE & TIME | STATUS OF ITEM | LOCATION |
|---|---|---|
| **June 2, 2014 , 9:30 am** | **Delivered** | **WHITE PLAINS, NY 10601** |

Your item was delivered at 9:30 am on June 2, 2014 in WHITE PLAINS, NY 10601.

| | | |
|---|---|---|
| May 31, 2014 , 3:22 am | Processed through USPS Sort Facility | WHITE PLAINS, NY 10610 |
| May 28, 2014 , 11:42 pm | Processed through USPS Sort Facility | PHOENIX, AZ 85026 |
| May 27, 2014 , 12:33 pm | Undeliverable as Addressed | MESA, AZ 85212 |
| May 26, 2014 , 10:33 pm | Processed through USPS Sort Facility | PHOENIX, AZ 85026 |
| May 25, 2014 , 7:36 am | Depart USPS Sort Facility | PHOENIX, AZ 85026 |
| May 24, 2014 , 5:01 pm | Processed through USPS Sort Facility | PHOENIX, AZ 85026 |
| May 23, 2014 , 1:17 am | Depart USPS Sort Facility | WHITE PLAINS, NY 10610 |
| May 22, 2014 , 10:47 pm | Processed through USPS Sort Facility | WHITE PLAINS, NY 10610 |

## Available Actions

Text Updates

Email Updates

## Track Another Package

**What's your tracking (or receipt) number?**

Track It

LEGAL     ON USPS.COM     ON ABOUT.USPS.COM     OTHER USPS SITES

Privacy Policy ›     Government Services ›     About USPS Home ›     Business Customer Gateway ›
Terms of Use ›     Buy Stamps & Shop ›     Newsroom ›     Postal Inspectors ›
FOIA ›     Print a Label with Postage ›     USPS Service Alerts ›     Inspector General ›
No FEAR Act EEO Data ›     Customer Service ›     Forms & Publications ›     Postal Explorer ›
    Delivering Solutions to the Last Mile ›     Careers ›     National Postal Museum ›

https://tools.usps.com/go/TrackConfirmAction?qtc_tLabels1=70122920000103364866        1/2

7013 0600 0002 1038 0685

REASON CHECKED

X Moved, Left No Address
☐ Forwarding Order Expired
X Unable To Forward
☐ Attempted - Not Known
☐ Unclaimed
☐ Such Street
☐ Insufficient   ☐ Refused
☐ No Such Number

NIXIE

85292060-1N

RETURN TO SENDER
UNABLE TO FORWARD
UNABLE TO FORWARD
RETURN TO SENDER
RETURN TO SENDER

PS Form 3811, February 2004          Domestic Return Receipt

■ Complete items 1, 2, and 3.
  item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse
  so that we can return the card to you.
■ Attach this card to the back of the mailpiece,
  or on the front if space permits.

1. Article Addressed to:

Brian Langenbach
Sherilynn B. Langenbach
8642 E. Waterford Cir.
Mesa, AZ 85212

2. Article Number
(Transfer from service label)          7013 0600 0002 1038 0685

BRIAN LANGENBACH
SHERILYNN B. Langenbach
8642 E. Water ford Cir.

(847) E. Water ford Cir.
10/21/13

3
DDRESS 10/09/13

A. ☐ Agent
   ☐ Addressee

B. Received by ( Printed Name )          C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:       ☐ No

VTF

3. Service Type
   ☑ Certified Mail    ☐ Express Mail
   ☐ Registered        ☐ Return Receipt for Merchandise
   ☐ Insured Mail      ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)          ☐ Yes

English        Customer Service        USPS Mobile                                    Register / Sign In



Search USPS.com or Track Packages

Quick Tools
Track                                Ship a Package        Send Mail        Manage Your Mail        Shop        Business Solutions
            Find
Find USPS Locations
Buy Stamps
Schedule a Pickup
Calculate a Price              **USPS Tracking™**                            Customer Service ›
Find ZIP Codes™                                                                Have questions? We're here to help.
Hold Mail
Change of Address

Tracking Number: 70130600000210380685

Your item was returned to the sender on October 10, 2013 at 11:53 am in GILBERT, AZ 85234 because the addressee moved and left no
forwarding address.

## Product & Tracking Information            ## Available Options

Postal Product:            Features:                        Email Updates
                           Certified Mail™



| DATE & TIME | STATUS OF ITEM | LOCATION |
|---|---|---|
| **October 10, 2013 , 11:53 am** | **Moved, Left no Address** | **GILBERT, AZ 85234** |
| October 10, 2013, 10:27 am | Arrival at Unit | GILBERT, AZ 85234 |
| October 10, 2013 , 2:23 am | Processed through USPS Sort Facility | PHOENIX, AZ 85043 |
| October 9, 2013 , 3:48 pm | Processed through USPS Sort Facility | PHOENIX, AZ 85043 |
| October 7, 2013 , 10:54 am | Undeliverable as Addressed | MESA, AZ 85212 |
| October 7, 2013 , 1:04 am | Processed through USPS Sort Facility | PHOENIX, AZ 85043 |
| October 6, 2013 | Depart USPS Sort Facility | PHOENIX, AZ 85043 |
| October 5, 2013 , 9:53 pm | Processed through USPS Sort Facility | PHOENIX, AZ 85043 |
| October 2, 2013 | Depart USPS Sort Facility | WHITE PLAINS, NY 1061( |
| October 2, 2013 , 8:23 pm | Processed through USPS Sort Facility | WHITE PLAINS, NY 1061( |

## Track Another Package

What's your tracking (or receipt) number?

Track It

LEGAL                        ON USPS.COM                ON ABOUT.USPS.COM            OTHER USPS SITES
Privacy Policy ›              Government Services ›        About USPS Home ›            Business Customer Gateway ›
Terms of Use ›                Buy Stamps & Shop ›          Newsroom ›                   Postal Inspectors ›

**FedEx**
**Express**

US Airbill

FedEx
Tracking
Number   8017 4901 3524

**1  From** *Please print and press hard.*

Date

Sender's FedEx
Account Number

Sender's
Name   HON. LISA M. SMITH, U.S.M.J.   Phone ( 914 ) 390-4000

Company   UNITED STATES DISTRICT COURT

CLERKS OFFICE

Address   300 QUARROPAS ST

City   WHITE PLAINS   State NY   ZIP 10601-4140

**2  Your Internal Billing Reference**
First 24 characters will appear on invoice.

**3  To**
Recipient's
Name   BRIAN AND SHEILYNN LANGEBAUGH   Phone ( )

Company

Address   842 E. WATERFORD CIR.

Address
Use this line for the HOLD location address or for continuation of your shipping address.

City   MESA   State AZ   ZIP 85212

010129S619

**Ship it. Track it. Pay for it. All online.**
Go to fedex.com.

**4  Express Package Service**   *To most locations.*
NOTE: Service order has changed. Please select carefully.

☐ FedEx First Overnight
☐ FedEx Priority Overnight
☒ FedEx Standard Overnight

Form
ID No.   0215

**5  Packaging**   *Declared value limit $500.*

☒ FedEx Envelope*   ☐ FedEx Pak*   ☐ FedEx Box   ☐ FedEx Tube   ☐ Other

**6  Special Handling and Delivery Signature Options**

☐ SATURDAY Delivery

**Does this shipment contain dangerous goods?**
☒ No   ☐ Yes   ☐ Yes
☐ Cargo Aircraft Only

**7  Payment**   *Bill to:*

☒ Sender   ☐ Recipient   ☐ Third Party   ☐ Credit Card   ☐ Cash/Check

Total Packages   Total Weight   Total Declared Value

Rev. Date 2/12 • Part #157134 • ©1994–2012 FedEx • PRINTED IN U.S.A. SRS

SPH2

PULL AND RETAIN THIS COPY BEFORE AFFIXING TO THE PACKAGE. NO POUCH NEEDED.



**FedEx**

| 801749013524 |
|---|

| Ship (P/U) date | | Actual delivery : |
|---|---|---|
| **Tues 10/15/2013 5:38 pm** | **Delivered** | **Wed 10/16/2013 4:28 pm** |
| WHITE PLAINS, NY  US | Signature not required | AZ  US |

Let us tell you when your shipment arrives. Sign up for delivery notifications

**Travel History**

| Date/Time | Activity | Location |
|---|---|---|
| – 10/16/2013 - Wednesday | | |
| 4:28 pm | Delivered<br>Left at front door. Package delivered to recipient address - release authorized | AZ |
| 9:09 am | On FedEx vehicle for delivery | TEMPE, AZ |
| 7:31 am | At local FedEx facility | TEMPE, AZ |
| 5:34 am | At destination sort facility | PHOENIX, AZ |
| 4:26 am | Departed FedEx location | MEMPHIS, TN |
| – 10/15/2013 - Tuesday | | |
| 11:10 pm | Arrived at FedEx location | MEMPHIS, TN |
| 8:10 pm | Left FedEx origin facility | ELMSFORD, NY |
| 5:38 pm | Picked up | ELMSFORD, NY |

Local Scan Time     Select

**Shipment Facts**

| Tracking number | 801749013524 | Service | FedEx Priority Overnight |
|---|---|---|---|
| Delivered To | Residence | Packaging | FedEx Envelope |
| Special handling section | Deliver Weekday,<br>Residential Delivery | | |

TATES DISTRICT COURT
CHAMBERS OF
**MARGARET SMITH**
TATES MAGISTRATE JUDGE .
D STATES COURTHOUSE
QUARROPAS STREET
PLAINS, NEW YORK 10601

OFFICIAL BUSINESS

UNITED STATES POSTAGE

02 1A
0004362781    DEC 05 2013
MAILED FROM ZIP CODE 10601

$ 00.46⁰

BRIAN LANGENBACH

SHERILYNN B. LANGENBACH

8642 E. WATERFORD CIR.

MESA, AZ   85212

RETURN TO SENDER
ADDRESSEE UNKNOWN

NIXIE      850   DE 1009      0012/21/13

RETURN TO SENDER
ATTEMPTED - NOT KNOWN
UNABLE TO FORWARD

BC:  10601414000      *1579-01495-21-34